UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| ————————————— x | | |
| FRANK R. TRIPSON, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. |
| | : | |
| | : | CLASS ACTION COMPLAINT |
| Plaintiff, | : | |
| | : | |
| vs. | : | JURY TRIAL DEMANDED |
| | : | |
| AMERIPRISE FINANCIAL INC., | : | |
| AMERIPRISE FINANCIAL SERVICES, LLC, and AMERICAN ENTERPRISE INVESTMENT SERVICES INC., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| ————————————— x | | |

By and through his undersigned counsel, Frank R. Tripson ("Plaintiff") brings this class action against defendants Ameriprise Financial, Inc. ("AFI"), Ameriprise Financial Services, LLC ("AFS"), and American Enterprise Investment Services Inc. ("AEIS") (collectively, "Defendants" or "Ameriprise"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, but not limited to, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by Ameriprise with the United States Securities and Exchange Commission; (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1. Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to their AIMMA Sweep Program (defined below). Under the AIMMA Sweep Program, Defendants swept idle customer cash into interest-bearing accounts at banks selected by, and affiliated with, Defendants.

2. The cash sweep accounts were highly lucrative for Defendants and their affiliate banks but paid unreasonably low, below-market interest rates to customers. As such, Defendants used the AIMMA Sweep Program to generate massive revenue for themselves at the expense of their customers.

3. Defendants' use of the AIMMA Sweep Program to enrich themselves by paying unreasonably low interest rates to customers breached their fiduciary duties and contractual obligations and violated several state and federal laws including the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute") and the Investment Advisers Act of 1940 ("Advisers Act").

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 15 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 15 U.S.C. §80b-1-21.

5.      This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and intentionally availed themselves of the laws and markets of Minnesota through the promotion, sale, marketing, distribution, and operation of their products and services.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transacted business and had offices in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

7.      In connection with the challenged conduct, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails and interstate telephone communications.

## PARTIES

**Plaintiff**

8.      Plaintiff Frank R. Tripson is a citizen of Pennsylvania.  During the relevant time period, Plaintiff held a traditional brokerage account with Ameriprise.  Uninvested cash Plaintiff held in these accounts was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein.

**Defendants**

9.     Defendant Ameriprise Financial, Inc. is a Delaware corporation headquartered at 707 2nd Avenue South, Minneapolis, Minnesota 55402.  AFI is a financial services company that conducts business throughout the United States, with approximately $1.4 trillion in assets under management and 13,800 employees.  AFI is the parent company and control person of AFS and AEIS.

10.     Defendant Ameriprise Financial Services, LLC d/b/a/ Ameriprise Financial, formerly known as Ameriprise Financial Services, Inc., is a Delaware limited liability company headquartered at 707 2nd Avenue South, Minneapolis, Minnesota 55402.  During the relevant time period, AFS was a broker-dealer and a Registered Investment Advisor.  AFS was one of Ameriprise's agents for the establishment, maintenance, and operation of Defendants' AIMMA Sweep Program.  AFS was a wholly owned subsidiary of, and controlled by, AFI.

11.     Defendant American Enterprise Investment Services Inc. is a Minnesota corporation headquartered at 901 3rd Avenue South, Minneapolis, Minnesota 55402.  During the relevant time period, AEIS was a broker-dealer.  AEIS was one of Ameriprise's agents for the establishment, maintenance, and operation of the AIMMA Sweep Program.  AEIS was a wholly owned subsidiary of, and controlled by, AFI.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' AIMMA Sweep Program**

12.     During the relevant time period, Ameriprise offered brokerage and investment advisory services to customers nationwide.  These services included cash sweep programs offered to customers through AFI's subsidiaries, AFS and AEIS, as "introducing broker" and "clearing broker," respectively.  The cash sweep programs included the Ameriprise Insured Money Market Account program ("AIMMA Sweep Program" or "AIMMA").

13.    The terms and conditions of the AIMMA Sweep Program were set forth in the Ameriprise Brokerage Client Agreement[1] ("Client Agreement"), Other Important Brokerage Disclosures[2] ("Brokerage Disclosures"), and Regulation Best Interest Disclosure[3] (collectively, "Program Documents"), which were posted on Ameriprise's public website.  The Brokerage Disclosures and Regulation Best Interest Disclosure incorporated the terms of the Client Agreement.  The Client Agreement was governed by the laws of the State of Minnesota.

14.    Under the AIMMA Sweep Program, AEIS automatically swept eligible clients' uninvested cash balances into interest-bearing deposit accounts ("Deposit Accounts") at banks selected by Defendants ("Program Banks"), including Defendants' affiliate bank, Ameriprise Bank FSB ("Ameriprise Bank").[4]  Funds in the Deposit Accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").[5]

15.    The Program Documents provided that AFS and AEIS were the agents of Ameriprise customers in the AIMMA Sweep Program:

---

[1]    Ameriprise    Financial,    *Brokerage    Client    Agreement*, https://www.ameriprise.com/binaries/content/assets/ampcom/wcm/AMP_402468.PDF    (Dec. 2024).

[2]    Ameriprise    Financial,    *Other    Important    Brokerage    Disclosures*, https://www.ameriprise.com/binaries/content/assets/ampcom/wcm/AMP_402469.PDF    (Dec. 2024).

[3]    Ameriprise    Financial,    *Working    in    your    best    interest*, https://www.ameriprise.com/binaries/content/assets/ampcom/legal/regbi.pdf (Dec. 2024).

[4]    *Brokerage Client Agreement*, *supra* note 1 at 2; *Other Important Brokerage Disclosures*, *supra* note 2 at 2.

[5]    *Other Important Brokerage Disclosures*, *supra* note 2 at 2.

- "Sweep Programs are made available in accounts offered by [AFS] in its capacity as a broker-dealer, and services are provided by our affiliated clearing agent, [AEIS], as part of the overall brokerage services provided to your account(s)[.]"[6]

- "Your Introducing Broker [AFS] and the Clearing Broker [AEIS] have an agreement in which the Introducing Broker introduces customer accounts to the Clearing Broker on a fully disclosed basis. This means that the Introducing Broker is responsible for opening and approving your account[.]"[7]

- "AEIS is acting as your agent in establishing the Deposit Accounts at each bank, depositing funds into the Deposit Accounts, withdrawing funds from Deposit Accounts and transferring funds among Deposit Accounts."[8]

- "You will not have a direct account relationship with the [Program] Banks. AEIS, as your agent, will establish the Deposit Accounts for you at each [Program] Bank and make deposits to and withdrawals from the Deposit Accounts."[9]

- "AEIS will . . . open Deposit Accounts as your agent[.]"[10]

- "When funds are first available for deposit, AEIS, as your agent, will deposit available cash balances in your account into [your Deposit Account] and a linked [transaction account] at one or more of the [Program] Banks on the then-current Bank List[.]"[11]

- "All withdrawals necessary to satisfy debits in your account will be made by AEIS as your agent."[12]

16. The sweep interest on deposits in the AIMMA Sweep Program was determined and adjusted at the sole discretion of AFS and AEIS: "We [AFS and AEIS] reserve the right to change

---

[6]  *Id.*

[7]  *Brokerage Client Agreement*, *supra* note 1 at 1.

[8]  *Other Important Brokerage Disclosures*, *supra* note 2 at 7.

[9]  *Id.* at 5.

[10]  *Id.* at 4.

[11]  *Id.* at 7.

[12]  *Id.*

the methodology used to determine the interest rates in our sole discretion and without prior notice to you."[13]

**Defendants Reaped Significant Benefits from Their AIMMA Sweep Program to the Detriment of Customers, Who Were Paid Unreasonably Low Interest Rates**

17.     The AIMMA Sweep Program provided highly lucrative financial benefits to Defendants and Ameriprise Bank.  In particular, Ameriprise admitted that this arrangement created a "[c]onflict of [i]nterest" because customer deposits in the AIMMA Sweep Program provided Ameriprise Bank with "a stable, cost-effective source of lendable funds" that it used for its "lending and investment programs":

> Our affiliate, Ameriprise Bank, FSB, participates in AIMMA. Deposits at Ameriprise Bank provide the Bank with a stable, cost-effective source of lendable funds. Ameriprise Bank, like unaffiliated banks, uses the deposits it receives through its participation in AIMMA for its lending and investment programs, and it earns revenue based on the difference (or "spread") between the interest rate it receives from its investment and lending programs and what it pays to obtain the deposits. The deposit amounts to be placed at each bank, established by Ameriprise Bank and [Ameriprise service provider] IntraFi may result in Ameriprise Bank securing a higher position in the Bank List [of Program Banks] and thus receive higher deposits than other Program Banks.[14]

18.     Thus, by increasing the "spread" through lower interest payments to customers (*i.e.*, lowering the amount Ameriprise "pays to obtain the deposits"), Ameriprise Bank was able to increase its revenue from the AIMMA Sweep Program.

19.     In turn, Ameriprise Bank (and other Program Banks) paid fees to AEIS for sweeping customer cash into the Deposit Accounts.  Like Ameriprise Bank, AEIS directly

---

[13]     *Id.* at 4.

[14]     *Id.*; *see also Working in your best interest*, *supra* note 3 at 2 ("The banks participating in AIMMA earn income by lending or investing the deposits they receive and charging a higher interest rate to borrowers, or earning a higher yield, than the banks pay on the deposits held through AIMMA. This difference is known as the 'spread.' Like the unaffiliated banks participating in AIMMA, Ameriprise Bank earns spread revenue when it participates in AIMMA.").

benefited from increased cash sweeps into the Program Banks and lower interest rates paid to customers (thereby increasing the spread): "For AIMMA, each [Program] Bank will compensate AEIS for the placement of funds based on the average daily deposit balances at that Bank. The total compensation paid by each Program Bank to AEIS is negotiated and is based on a reference rate, such as the Federal Funds Rate, plus or minus a spread. Of this amount, IntraFi may receive compensation from AEIS of up to ten basis points as a service provider for the AIMMA. AEIS retains the balance of the amount paid by the participating Banks, less the account of interest paid to [customers] and the compensation to IntraFi."[15]

20.    Due to these adverse financial incentives, Defendants failed to negotiate and secure reasonable sweep interest rates for customers in the AIMMA Sweep Program. As defined in the Oxford English Dictionary, the term "reasonable" is synonymous with "fair" and "equitable."

21.    The United States Department of Labor defines a "reasonable" rate of interest as "a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (e.g., in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated."[16]

22.    Similarly, the United States Internal Revenue Service defines an "arm's length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the

---

[15]    *Other Important Brokerage Disclosures*, *supra* note 2 at 5; *see also Working in your best interest*, *supra* note 3 at 3, 13 (describing the "combined revenue earned by our affiliates, AEIS and Ameriprise Bank" from AIMMA deposits as a "conflict of interest").

[16]    Grant of Individual Exemptions; Deutsche Bank AG, 68 Fed. Reg. 34646 (June 10, 2003).

indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[17]  Thus, an interest rate is reasonable if it is based on a fair market valuation.

23.    In contrast, the AIMMA Sweep Program paid miniscule, below-market interest rates throughout the relevant time period, currently ranging from 0.30% to 2.0% depending on the amount deposited by a customer.[18]  These rates were **_significantly_** below several objective benchmarks of reasonableness:

- **Competitors' Sweep Programs**.  Defendants' sweep interest rates were far below fair market value, as demonstrated by the rates paid by their competitors, who offered FDIC-insured sweep accounts similar to those in the AIMMA Sweep Program.  For example, competitor Moomoo's rate currently is 4.35%,[19] Webull's rate is 4.00%,[20] Vanguard's rate is 3.90%,[21] Fidelity's rate is 2.32%,[22] and Robert W. Baird's rate is between 1.52% and 3.11%.[23]

- **Defendants' Other Interest-Bearing Accounts**.  Further, the sweep interest rates paid by the AIMMA Sweep Program were far lower than the interest rates paid by other products offered by Defendants outside of the AIMMA Sweep Program.  For example, Ameriprise offered money market mutual fund sweep options from

---

[17]  26 C.F.R. §1.482-2(a)(2).

[18]  Ameriprise Financial, *Brokerage sweep and rates*, https://www.ameriprise.com/products/cash-cards-lending/brokerage-sweep-options (last visited Dec. 23, 2024).

[19]  Moomoo Financial Inc., *Boost your uninvested cash with 4.35% APY*, https://www.moomoo.com/us/invest/cashsweep (last visited Dec. 20, 2024).

[20]  Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last visited Dec. 20, 2024).

[21]  Vanguard, *Earn 3.90% APY with the Vanguard Cash Plus Account*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Dec. 20, 2024).

[22]  Fidelity, *Fidelity Individual Retirement Accounts (IRA)*, https://digital.fidelity.com/prgw/digital/fdic-interest-rate/ira (last visited Dec. 20, 2024).

[23]  Baird, *Cash Sweep Program*, https://www.rwbaird.com/cashsweeps/ (last visited Dec. 20, 2024).

Dreyfus yielding 4.25% and 4.50%[24] and savings accounts through Ameriprise Bank with interest rates ranging from 2.96% and 3.44%.[25]

- **Federal Funds Rate**.  The sweep interest rates in the AIMMA Sweep Program were also far below the United States Federal Reserve's benchmark federal funds rate, currently at 4.25% to 4.50%.[26]

- **Three-Month Treasury Bill Rate**.  The sweep interest rates in the AIMMA Sweep Program were far below the three-month United States Treasury bill rate, currently at 4.25%.[27]

- **Repurchase Rate**.  The sweep interest rates in the AIMMA Sweep Program were well below the overnight interest rate at which the United States Federal Reserve repurchases securities from private banks (*i.e.*, the repo rate), which is currently 4.25%.[28]

24.     These benchmarks individually and collectively demonstrated that Defendants' sweep interest rates were unreasonable.  As a result, Plaintiff and the Class (defined below) suffered damages by receiving far lower interest payments than they would have received if the sweep interest rates were reasonable.

**Defendants Breached Their Contractual Obligations and Fiduciary Duties Related to Their AIMMA Sweep Program**

25.     Under the Program Documents, AFS and AEIS agreed to act as their customers' agents, and, thus, were contractually obligated to act in their customers' best interests in seeking

---

[24]   Ameriprise Financial, *Brokerage sweep and rates*, *supra* note 18.

[25]   Ameriprise Financial, *Ameriprise Bank Savings Account*, https://www.ameriprise.com/products/cash-cards-lending/bank-savings#rates (last visited Dec. 23, 2024).

[26]   Federal Reserve, *Economy at a Glance – Policy Rate*, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last visited Dec. 20, 2024).

[27]   Federal Reserve Bank of St. Louis, *3-Month Treasury Bill Secondary Market Rate, Discount Basis*, https://fred.stlouisfed.org/series/DTB3 (last visited Dec. 20, 2024).

[28]   Federal Reserve Bank of St. Louis, *Overnight Reverse Repurchase Agreements Award Rate: Treasury Securities Sold by the Federal Reserve in the Temporary Open Market Operations*, https://fred.stlouisfed.org/series/RRPONTSYAWARD (last visited Dec. 20, 2024).

and negotiating reasonable sweep interest rates under the AIMMA Sweep Program.  In other words, reasonableness was implicit in the Program Documents and governed the sweep interest rates paid to customers in the AIMMA Sweep Program.

26.    Further, Defendants' conduct violated their fiduciary duties.  As an investment advisor, AFS owed fiduciary duties to its clients under the Advisers Act.[29]  Consistent with these fiduciary duties, the Program Documents stated that AFS was committed "to act in your best interest and not place our interests ahead of yours."[30]

27.    AFS owed similar duties of care under Regulation Best Interest, which required it to act in its retail customers' best interests and prohibited AFS from placing its own interests ahead of its retail customers' interests.[31]

28.    However, as discussed above, AFS and AEIS violated these contractual and fiduciary duties by failing to act in their customers' best interests when they provided them with unreasonably low sweep interest rates in comparison to several objective benchmarks discussed above, including the sweep interest rates paid by competitors and the federal funds rates.

**Defendants Made Material Misrepresentations and Omissions Regarding Their AIMMA Sweep Program**

29.    In the Program Documents, Defendants made material omissions by failing to disclose that, as discussed above, Defendants established and used the AIMMA Sweep Program

---

[29]    *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

[30]    *See* Ameriprise Financial, *Working in your best interest*, *supra* note 3 at 1.

[31]    *See* Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

to enrich themselves by paying unreasonably low interest rates to customers in order to increase the financial benefits to themselves and their affiliate bank, Ameriprise Bank.

30.    The Program Documents also misleadingly stated that "[t]he rate is generally based on a variety of factors including, but not limited to, prevailing economic and market conditions"[32] and "[t]he interest income you receive . . . can fluctuate daily depending on prevailing economic and business conditions."[33]  These statements were misleading and omitted material facts because they implied that the AIMMA Sweep Program paid market interest rates when, in reality, the AIMMA Sweep Program always paid below-market and unreasonably low interest rates.

31.    In the Program Documents, Defendants made the additional misleading statements that "the money settlement options made available to you *may* offer a lower interest rate than alternative cash investment products made available through Ameriprise Financial"[34] and "[t]he interest rates paid with respect to the Deposit Accounts at a bank *may* be higher or lower than the interest rates available to depositors making deposits directly with the bank, with other depository institutions in comparable accounts, or in other available money settlement options made available through AEIS."[35]  These statements were misleading and omitted material facts because, in reality, the AIMMA Sweep Program interest rates were *always* significantly below market alternatives (*i.e.*, the payment of below-market interest rates was not a mere possibility that "may" occur).

32.    Moreover, Defendants' statements about potentially *lower* interest rates do not excuse their contractual and fiduciary obligations to pay *reasonable* interest rates, as described

---

[32]    Ameriprise Financial, *Other Important Brokerage Disclosures*, *supra* note 2 at 4.

[33]    *Id.* at 7.

[34]    Ameriprise Financial, *Brokerage Client Agreement*, *supra* note 1 at 2.

[35]    Ameriprise Financial, *Other Important Brokerage Disclosures*, *supra* note 2 at 8.

above. These statements must be construed harmoniously with Defendants' contractual and fiduciary obligations.

**Defendants Violated the RICO Statute**

33. Defendants violated the RICO Statute through their implementation of the AIMMA Sweep Program.

34. AFS and AEIS were "enterprises" within the meaning of the RICO Statute. Through AFS and AEIS, Defendants knowingly and intentionally devised and operated the AIMMA Sweep Program as a scheme to defraud customers, including Plaintiff and the Class. Defendants used the AIMMA Sweep Program to benefit and enrich themselves through, among other things, the payment of unreasonably low interest rates to customers on money deposited into the AIMMA Sweep Program.

35. The AIMMA Sweep Program involved commercial activities across state lines, including Defendants' distribution of the Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

36. Through the AIMMA Sweep Program, Defendants conducted and participated in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts"). Defendants' Racketeering Acts included indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Program Documents on the public website of Ameriprise and distributing them to customers throughout the country.

37. The Racketeering Acts were related in that they were taken in furtherance of Defendants' AIMMA Sweep Program scheme. The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the AIMMA Sweep Program.

38.     Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute. Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the AIMMA Sweep Program scheme, including posting the materially false and misleading Program Documents on the public website of Ameriprise and distributing them to customers throughout the country.

39.     As customers of the AIMMA Sweep Program, Plaintiff and the Class were damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the AIMMA Sweep Program.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action against Defendants as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all customers who had cash deposits or balances in the AIMMA Sweep Program ("Class"). Excluded from the Class are Defendants, officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

41.     The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because Ameriprise oversees approximately $1.4 trillion in client assets worldwide.

42.     Plaintiff's claims are typical of Class members' claims because Plaintiff's cash deposits were subject to the AIMMA Sweep Program, and, therefore, Plaintiff's claims, and those of all other Class members, arose from the same wrongful conduct by Defendants alleged herein.

43.     Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class action litigation.  Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

44.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

45.     Because Defendants act or refuse to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants act on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

(a)    whether Defendants violated the laws as alleged herein;

(b)    whether Defendants owed fiduciary duties to Plaintiff and members of the Class in connection with the AIMMA Sweep Program;

(c)    whether Defendants breached their fiduciary duties to Plaintiff and members of the Class in connection with the AIMMA Sweep Program;

(d)    whether Defendants breached their contractual obligations to Plaintiff and members of the Class in connection with the AIMMA Sweep Program;

(e)    whether AFI and AFS violated the Advisers Act;

(f)    whether Defendants violated the RICO Statute;

(g)    whether Defendants made material misrepresentations and/or omissions in connection with the AIMMA Sweep Program;

(h)    whether Defendants were unjustly enriched by their wrongful conduct;

(i)    whether the members of the Class sustained damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(j)    whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

48.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

49.    During the relevant time period, AFS and AEIS were the agents of customers enrolled in the AIMMA Sweep Program, including Plaintiff and the Class.  AFI owned and controlled AFS and AEIS.

50.    AFS and AEIS owed fiduciary duties to Plaintiff and the Class, including duties to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

51.     AFS and AEIS violated their duties to act in the best interests of Plaintiff and the Class by using the AIMMA Sweep Program to enrich themselves, AFI, and Ameriprise Bank at the expense of customers who were paid unreasonably low interest rates, as described above.

52.     AFS and AEIS also violated their duties to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Program Documents, as described above.

53.     Further, AFS and AEIS violated their duties to act with reasonable care to verify the truthfulness of the information set forth in the AIMMA Sweep Program, which were materially misleading and omit material facts for the reasons described above.

54.     As a direct and proximate result of AFS' and AEIS' breaches of fiduciary duties, Plaintiff and the Class suffered damages and are entitled to recover such damages from Defendants.

## COUNT II

### VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940 AGAINST AMERIPRISE FINANCIAL, INC. AND AMERIPRISE FINANCIAL SERVICES, LLP

55.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

56.     During the relevant time period, AFS was registered as an investment adviser under the Advisers Act.  AFI owned and controlled AFS.

57.     AFS violated Section 206 of the Advisers Act by failing to serve the best interests of its clients, Plaintiff and the Class, and by placing its own interests ahead of Plaintiff's and the Class' interests in connection with the AIMMA Sweep Program, as further alleged herein.  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019).

58.     The Client Agreement should be deemed void pursuant to Section 215(b) of the

Advisers Act, which provides that every

> contract made in violation of any provision of this title and every contract
> heretofore or hereafter made, the performance of which involves the violation of,
> or the continuance of any relationship or practice in violation of any provision of
> this title, or any rule, regulation, or order thereunder, shall be void (1) as regards
> the rights of any person who, in violation of any such provision, rule, regulation, or
> order, shall have made or engaged in the performance of any such contract, and (2)
> as regards the rights of any person who, not being a party to such contract, shall
> have acquired any right thereunder with actual knowledge of the facts by reason of
> which the making or performance of such contract was in violation of any such
> provision.

59.     Accordingly, Plaintiff seeks rescission of the Client Agreement and restitution of

the consideration given pursuant to their purported terms.

## COUNT III

### BREACH OF CONTRACT AGAINST ALL DEFENDANTS

60.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

61.     Plaintiff and Class members were parties to the Program Documents with AFS

and/or AEIS.   The Program Documents set forth the contractual terms and conditions of the

AIMMA Sweep Program.   AFI owned and controlled AFS and AEIS.

62.     Pursuant to the Program Documents, AFS and AEIS were contractually obligated

to act as agents on behalf of Plaintiff and the Class, and, thus, were contractually obligated to act

in Plaintiff's and the Class' best interests in seeking and negotiating reasonable sweep interest

rates under the AIMMA Sweep Program.

63.     AFS and AEIS breached their contractual obligations by failing to provide Plaintiff

and the Class with reasonable interest rates on their deposits in the AIMMA Sweep Program.

Rather, the sweep interest rates provided by AFS and AEIS were below market and unreasonably

low.  As such, AFS and AEIS denied Plaintiff and the Class the full benefit of their bargain under the Program Documents.

64.    As a direct and proximate result of AFS' and AEIS' breaches of contract, Plaintiff and the Class sustained damages.

## COUNT IV

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS

65.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

66.    Plaintiff and Class members were parties to the Program Documents with AFS and/or AEIS.  The Program Documents set forth the contractual terms and conditions of the AIMMA Sweep Program.  AFI owned and controlled AFS and AEIS.

67.    Implicit in the Program Documents were duties of good faith and fair dealing.

68.    AFS and AEIS breached their duties of good faith and fair dealing by failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the AIMMA Sweep Program.  Rather, the interest rates provided by AFS and AEIS were below market and unreasonably low.  As such, AFS and AEIS denied Plaintiff and the Class the full benefit of their bargain under the Program Documents.

69.    As a direct and proximate result of AFS' and AEIS' breaches of the implied covenants of good faith and fair dealing, Plaintiff and the Class sustained damages.

## COUNT V

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d), AGAINST ALL DEFENDANTS

70.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

71.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provides in relevant part:

(c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]

(d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

72.     At all relevant times, Defendants were "person[s]" because they are capable of holding a legal or beneficial interest in property.

73.     During the relevant time period, AFS and AEIS were enterprises engaged in interstate commerce.  Through AFS and AEIS, Defendants knowingly and intentionally devised and operated the AIMMA Sweep Program as schemes to defraud investors.  Defendants used the AIMMA Sweep Program to enrich themselves and Ameriprise Bank by paying unreasonably low interest rates to customers of the AIMMA Sweep Program.

74.     Defendants conducted and participated in multiple, related Racketeering Acts for the purpose of implementing the AIMMA Sweep Program.  The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the AIMMA Sweep Program over a multi-year period, constituted a "pattern of racketeering activity."  The Racketeering Acts were made possible by the regular, repeated, and continuous use of the employees, facilities, and services of AFS and AEIS.

75.     Defendants' Racketeering Acts included the following indictable, predicate offenses:

(a)     **Mail Fraud**: Defendants violated 18 U.S.C. §1341 by sending and receiving materials via United States mail and commercial interstate carriers for the purpose of conducting the fraudulent AIMMA Sweep Program scheme, including the Program Documents.

- 19 -

As described above, the Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)    **Wire Fraud**: Defendants violated 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of conducting the fraudulent AIMMA Sweep Program scheme.  The writings included the Program Documents, which were posted on AEIS' and AFI's public websites.  As described above, the Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

76.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the AIMMA Sweep Program scheme, including mailing and transmitting the Program Documents to customers.

77.    Plaintiff and the Class suffered damages by reason of Defendants' payment of unreasonably low interest rates on their deposits in the AIMMA Sweep Program, in violation of 18 U.S.C. §1962(c)-(d).

78.    Plaintiff's and the Class' injuries were directly and proximately caused by Defendants' racketeering activity.

**COUNT VI**

**NEGLIGENCE AGAINST ALL DEFENDANTS**

79.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

80.    During the relevant time period, AFS and AEIS were the agents of customers enrolled in the AIMMA Sweep Program, including Plaintiff and the Class.  AEIS also facilitated the AIMMA Sweep Program by accepting payments from customers through its online investment

platform, which are swept into the AIMMA Sweep Program. AFI owned and controlled AFS and AEIS.

81.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the AIMMA Sweep Program.

82.    Defendants' conduct with respect to the AIMMA Sweep Program, as described above, was negligent. By failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the AIMMA Sweep Program, Defendants breached their duty to act with reasonable care.

83.    Defendants' negligence directly and proximately caused harm to Plaintiff and the Class.

**COUNT VII**

**NEGLIGENT MISREPRESENTATIONS AND OMISSIONS
AGAINST ALL DEFENDANTS**

84.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

85.    During the relevant time period, AFS and AEIS were the agents of customers enrolled in the AIMMA Sweep Program, including Plaintiff and the Class. AEIS also facilitated the AIMMA Sweep Program by accepting payments from customers through its online investment platform, which are swept into the AIMMA Sweep Program. AFI owned and controlled AFS and AEIS.

86.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the AIMMA Sweep Program.

87.     Defendants negligently made material misrepresentations and omissions in the Program Documents, as described above, which were posted on AEIS' and AFI's public websites.

88.     Plaintiff and the proposed Class justifiably relied on Defendants' Program Documents and accordingly deposited and maintained cash balances in the AIMMA Sweep Program to their detriment.

89.     Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## COUNT VIII

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

90.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

91.     Defendants financially benefitted from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below-market interest payments on their balances in the AIMMA Sweep Program.  These unlawful acts caused Plaintiff and the Class to suffer injury and monetary loss.

92.     As a result of the unlawful acts alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and the Class.

93.     Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.      Declaring that this action is a proper class action, certifying the Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel for the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the Class for all damages sustained as a result of Defendants' wrongdoing, in amounts to be proven at trial, including interest thereon;

C.      Awarding treble damages in favor of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.      Ordering rescission of the Client Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.      Such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: December 31, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
STEPHEN R. ASTLEY
ANDREW T. REES
RENE A. GONZALEZ
SCOTT I. DION


*s/ Stuart A. Davidson*

STUART A. DAVIDSON (#400754)

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sdavidson@rgrdlaw.com
sastley@rgrdlaw.com
arees@rgrdlaw.com
rgonzalez@rgrdlaw.com
sdion@rgrdlaw.com

LAW OFFICE OF ALFRED G. YATES, JR.,
P.C.
ALFRED G. YATES, JR.
1575 McFarland Road, Suite 305
Pittsburgh, PA  15216
Telephone: 412/391-5164
yateslaw@aol.com

*Attorneys for Plaintiff*